Johnson, J.
This is a contest among eleven .attaching creditors of. Louis and Frederick Ashbacher.
April 3, 1875, three of these creditors commenced separate actions in the court of common pleas, and issued attachments thereon, which were delivered to the sheriff at the same time ; and on the same day, were levied on a stock of goods, which were taken into the sheriff’s possession and so held until their sale by him as hereinafter stated.
On 5th, 6th, 14th and 20th of April, 1875, like actions were commenced by the other eight creditors; attachments were issued to the same officer, and levied on the same property, on the days they were issued, each subject to the former levies.
May 3, 1875, the three creditors obtained judgments, and on the same day issued executions in the usual form to the sheriff (instead of orders of sale), on which the following return was made:
“Received this execution May 3d, a. d. 1875. On the same day I levied on the stock of goods in my hands, heretofore held under eleven orders of attachment, three of which were of concurrent date, to wit: April 3d, a. d. 1875 (one of which is issued in this case), and styled as follows, to wit: Albert T. Babbitt and Edgar A. Weed; L. S. Baumgardner & Co.; and *97 Joseph Roemer, William Stern and Henry Stern, against said Lonis Ashbaeher and Frederick Ashbaeher. The other attachments are as follows, to wit: Adam Stout, vs. Louis Ashbaeher and Frederick Ashbacher ; Hays Bros. & Co., vs. Louis Ashbacher t and Frederick Ashbacher; the last two were of even date, to wit: April 5, A. D. 1875. John A. Griffith & Co., vs. Louis Ashbacher and Frederick Ashbacher; Desbecker & Block, vs. Louis Ashbacher and Frederick Ashbacher (said last two were of even date, to wit: April 6th, A. D. 1875). Lippincott, Johnson & Co., vs. Louis Ashbacher and Frederick Ashbacher; John Alburger & Co., vs. Louis Ashbacher and Frederick Ashbacher (said last two were of even date, to wit: April 14th, A. D. 1875). Gaus, Liebman & Co., vs. Louis Ashbacher and Frederick Ashbacher ; Strauss, Loeb & Co., vs. Louis Ashbacher and Frederick Ashbacher (said last two were of even date, to wit: April 20th, A. D. 1875). Each of said attachments was levied on the day of its date, and on the 3d day of May, 1875, I caused said goods to be advertised for sale in the Defiance Democrat, a newspaper published at Defiance, Defiance county, Ohio, on the 20th day of May, 1875, at the hour of 10 o’clock, A. M. of said day, at the Russell House block in Defiance, Ohio; and on said 20th day of May, A. D. 1875, I proceeded to offer said goods for sale, and then and there came different persons and bought of said goods to the amount of seven hundred and nine and 73-100 dollars, a sufficient amount to satisfy this writ and the costs thereon.
“ John B. Hartman,
“ Sheriff'
The money thus made was brought into court, and, being insufficient to satisfy all the levies, a motion was filed for the distribution, on which the claims of the several creditors to priority were made, and the court ordered the money to be paid to the three creditors who first issued their attachments.
This judgment was affirmed in the district court.
June 15, the eight creditors obtained judgments in their actions, and on July 19, issued orders of sale thereon to sell the .attached property.
*98 Thus it appears that the sale was made on the executions by the officer who held the property under the attachments, before judgments or orders of sale were made in the latter cases.
The claim made by these subsequent attaching creditors is, that by issuing general executions instead of orders of sale, these three creditors thereby waived their priority, and let in the other attachments.
The argument is, that the act of issuing executions on these three judgments, directed to the sheriff, who held the attached property under whicli the sale was made, was of itself an abandonment of the priority acquired by the seizure under the attachments, and that, in law, the attachments which were levied subject to these became paramount.
In its simplest form' the question is, does the record show a waiver or abandonment of the priority created by the attachments first issued and served.
Executions ai’e of three hinds: 1. Against the property: 2. Against the person; and, 3. For the delivery of the possession of real property with damages and costs. Code, | 419.
A writ of attachment is in the nature of an execution, being against the property of the debtor. Its.office is to hold the property to satisfy the judgment to be obtained. It binds the property from the time of service. The property seized is in the custody of the law until discharged by one of the modes prescribed. If judgment is rendered for the plaintiff.it shall be satisfied out of the property seized and if there is not sufficient for that purpose, execution may issue as in other cases, to collect the residue of the judgment.
The order to sell attached property, after judgment, is therefore an execution of the first kind named, and differs from a fi. fa. execution only in this, that it is a command to sell the property in the officer’s hands under the attachment, while an execution in the usual form, commands a levy aud sale of the same, or any other property, to satisfy the same judgment. The latter form of execution is broader, and embraces the terms and office of the former. The greater includes the less. *99 Under the order of sale, the same advertisement, sale and return would have been made as was made under the executions.
The return of the sheriff is made as if he had made the sale, under an order of sale.
Looking to the sheriff’s action in the premises we discover no evidence of an abandonment of the former seizure by him. He held the property under the attachments after the judgments the same as before, until a sale, or until he was otherwise discharged from that duty. The levy which he made was at most a mere paper levy, as the property was already in his custody. Had there been sufficient to pay all the attachments, no one could doubt the right of the latter attachments to distribution, under their respective seizures, after they' should obtain their judgments.
Looking to the -acts of these three creditors, we see nothing' which evinces an intention to abandon their priority, unless the issuing of an execution in the usual form, against all the prop-' erty of the judgment debtor, instead of an execution against the property seized in attachment, and causing a sale thereon, constitute such an abandonment. We think it-does not.
They had established their priority, and were in court on motion for distribution after sale, insisting on that priority. The burden of showing a waiver or abandonment when the prior lien appears, rested on plaintiffs in error. The 'only evi-' dence relied on to show such waiver or abandonment is the fact that a general execution was issued, instead of a special one, to sell the attached property. This fact, standing alone, is quite as consistent with a continued assertion of his established lien, as with its abandonment, and, considered in connection with the other acts of the parties, such as sale of the property and the sheriff’s return as upon an order of sale, under their direction, as we must suppose, and the claim made to the money then in court by motion, it becomes conclusive that there was no purpose or intention of the kind. Their lien was established. As the property was in the sheriff’s hands, subject to it, no actual levy had to be made, and practically all. that was done on the execution was identical with what would' *100 have been done on the order. To constitute such a waiver or abandonment, the facts or circumstances should show that such was the intention. The property being all the time in the custody of the law, there was no change of possession, nor any direction amounting to a relinquishment.
In Bouton v. Lord, 10 Ohio St. 453, a levy was made upon real estate, upon a fi.fa. execution. After a return of the writ, a second fi.fa., instead of a vend. exp. was issued, under which the real estate levied on was sold, and it was held that the issuing of the second fi. fa., and a sale thereunder, did not constitute a waiver of the lien acquired by the first levy.
The same question arose in Lessee of Paine v. Mooreland, 15 Ohio, 436. That was the case of a judgment and order of sale, under the attachment law of 1824, which, in this respect, is substantially the same as the present law, as to the judgment and order to sell attached property. The sale was made upon a fi.fa., and not on an order of the court, as prescribed by the attachment law, and the question was whether the purchaser, at such sale, obtained a good title.
It was contended that as the act of 1824 required an order of sale, and as the land was not sold on such order, the officer had no power to make the sale. The reasoning of the court, in answer to this objection, is of equal force in the case at bar. It is said a general execution would have authorized a sale of any and all the property of the judgment debtor other than that attached. The officer was .therefore clothed with the power of sale. The difficulty was not a defect of power, but too much power. In its exercise the officer conformed to the statute and sold only the land attached. The court had failed to restrict his power to this property, but in its execution the officer confined himself to a sale of the land attached, and this was held a rightful exercise of authority to sell the attached property. It is urged that this case is not in point, as the question was as to title conferred by the sale, while here it is as to priority of liens. It is true the questions for decision in the two cases differ as stated; but the foundation of that decision was that the general execution authorized the sale of the attached property as well as all other property of the defend *101 ant in attachment, and therefore a sale under it of the attached property was a proper exercise of the power conferred by the judgment and order of sale in attachment. It was in law a sale in- the attachment proceedings. In this respect the two cases are identical, and from this fact the legal consequence follows that, being a sale under the judgment in attachment, the proceeds of the sale follow the priority established by it.
In this case no inten fcion to abandon is expressed, nor is it implied from the act of issuing a general execution and causing a sale of the same property on which the priority was established. It was only another form of writ used to make good the priority. Such at least is the presumption when nothing appears to the contrary.
• The property remained in the custody of the sheriff, under the seizure by attachment, until disposed of under order of the court, unless released by the attaching creditors.
The attachments of the eight creditors are all expressly subject to those of tlie three creditors. The latter remained in force at the time of the sale, and the money realized was brought into court for distribution, the same as if sold under an order of. sale regularly issued. In Acton v. Knowles, 4 Ohio St. 28, it was held that where personal property had been levied upon, with return of no sale for want of bidders, and the. property returned to the execution debtor, where it remained for fourteen months, the levy and lien, as against subsequent levies, was not in law void, but it was a question of fact whether the prior levy became void as tending to hinder and delay other creditors.
There the property, after levy, passed out of the actual possession of the officer, and yet it remained in his legal possession for'the purposes of the levy, unless the facts and circumstances showed that the levy was fraudulent.
Here the actual possession remained in the officer. The plaintiffs in error acquired no rights by their attachments, except expressly subject to the prior attachments, and the sale was made at the instance of the prior attaching creditors in the same manner as if regular orders had issued. No substantial right of plaintiffs in error, which they had acquired in this *102 property by their attachments, was impaired or affected by this sale, or by the court below in distributing the money according to the priorities established by the several attachments. The error, if any, consisted in selling under a general instead of a special execution. This is a technical rather than a substantial error, which a court of errors should disregard. Bear v. Knowles, ante, 43.
Considerable has been said in the argument, as to the effect of proceedings in bankruptcy, had they been instituted within four months, on the liens acquired by attachment, and on those by levy. It is claimed that the former would have been avoided, while the latter would have given a priority, and hence, it is argued, that these three creditors in order to avoid such a result voluntarily abandoned their liens by attachment, which would have been thus defeated, and sought to acquire liens by final process which would be saved by such proceedings.
Whether such would be the legal effect of proceedings in bankruptcy we need not inquire, as there is nothing in the record to show that such proceedings were contemplated or threatened, or even tending to show that the execution was issued with such object in view. Such proceedings were never instituted. The record shows that each party has diligently asserted his claims under his attachment, and the argument is therefore an inference not supported by the facts disclosed.

Judgment affirmed.